## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

Danell Tomasella, on behalf of herself and all others similarly situated,

                Plaintiff,

      v.

NESTLÉ USA, INC., a Delaware corporation,

           Defendant.

Case No. 1:18-cv-10269

**<u>JURY TRIAL DEMANDED</u>**

**<u>CLASS ACTION COMPLAINT</u>**

**TABLE OF CONTENTS**

                                                                                                    **Page**

I.      OVERVIEW ................................................................................................. 1

II.     PARTIES ..................................................................................................... 8

III.    JURISDICTION AND VENUE .................................................................. 9

IV.     FACTUAL ALLEGATIONS ...................................................................... 9

        A.      The Worst Forms of Child Labor in the Ivory Coast Are Used to
                Produce Nestlé's Chocolate Products ............................................... 9

                1.      In 2001 the Industry Agrees to the Harkin-Engel Protocol
                        and Promises to Eliminate the Worst Forms of Child Labor
                        in the Ivory Coast by 2005. ................................................. 12

                2.      The Industry Breaks this Promise Repeatedly in a Series of
                        Follow-up Statements Postponing Their Deadline to 2008,
                        to 2010, and now to 2020. ................................................... 13

                3.      Meanwhile the Worst Forms of Child Labor in the Ivory
                        Coast Continue – with a Recent Report Commissioned by
                        the U.S. Department of Labor Finding That They Have
                        Become *Even More Prevalent* – Despite Nestlé's
                        Assurances to the Contrary ................................................. 14

        B.      Nestlé Fails to Disclose the Use of the Worst Forms of Child Labor
                in Its Supply Chain. ....................................................................... 21

        C.      Nestlé Recognizes that the Use of Child or Slave Labor in its
                Supply Chain Is Wrong. ................................................................. 26

        D.      Nestlé's Use of the Worst Forms of Child Labor in Its Chocolate
                Products Supply Chain Is Material to Consumers Who Are
                Generally Left Unaware Without Disclosure at the Point of Sale .... 28

V.      CLASS ACTION ALLEGATIONS ............................................................ 31

VI.     CAUSES OF ACTION ............................................................................. 34

        COUNT I VIOLATION OF THE MASSACHUSETTS CONSUMER
        PROTECTION ACT (G.L. CHAPTER 93A) .............................................. 34

        COUNT II UNJUST ENRICHMENT ......................................................... 37

JURY TRIAL DEMAND ..................................................................................... 38

Plaintiff Danell Tomasella ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Nestlé USA Inc. ("Defendant" or "Nestle").  Plaintiff's allegations against Defendant are based upon information and belief and upon investigation of Plaintiff's counsel, except for allegations specifically pertaining to Plaintiff, which are based upon each Plaintiff's personal knowledge.

## I.    OVERVIEW

1.    America's largest and most profitable food conglomerates should not tolerate child labor, much less child slave labor, anywhere in their supply chains.  These companies should not turn a blind eye to known human rights abuses or shirk from investigating and preventing potential human rights abuses by their suppliers, especially when the companies consistently and affirmatively represent that they act in a socially and ethically responsible manner.  When these food conglomerates fail to uphold their responsibility for ensuring the absence of child and slave labor in their supply chains, their misconduct has the profound consequence of supporting and encouraging such labor.  And when these food conglomerates fail to disclose the use of child and slave labor in their supply chains to consumers, they are deceived into buying products they would not have otherwise and thereby unwittingly supporting child and slave labor themselves through their product purchases.  Such food conglomerates should be required to make restitution to the consumers they have deceived and to ensure the absence of child and slave labor in their supply chains in the future.

2.    Chocolate is perhaps the most beloved confectionary ingredient in the world. Most major companies that purchase chocolate obtain it from sources in West Africa, including Ivory Coast and Ghana.  Nestlé is one of the largest and most profitable food conglomerates in the United States.  Nestle sources its food products from all over the globe.  Among its products, Nestlé markets and distributes chocolate products, including Nestle Crunch, 100 Grand, Baby

Ruth, Butterfingers, Nestle Toll House, Nestle Hot Cocoa Mix, Nestle Milk Chocolate, and

Nestle seasonal confections, which are made with cocoa beans from West Africa ("Chocolate

Products").

3.     Although Nestlé's Corporate Business Principles and Supplier Code prohibit both

child and slave labor, Nestle is aware that cocoa beans from West Africa are produced using

child labor, including the Worst Forms of Child Labor as recognized by the United Nations:  the

compulsory labor of trafficked children and the labor of children involving dangerous tools,

transport of heavy loads, and exposure to toxic substances, *i.e*., hazardous work.[1]

4.     The Bureau of International Labor Affairs of the U.S. Department of Labor

confirms that cocoa beans from Ivory Coast have child and/or slave labor in the supply chain:[2]

| Country | Good | Child Labor | Forced Labor |
|---------|------|-------------|--------------|
| Cote d'Ivoire | Cocoa | X | X |
| Cote d'Ivoire | Coffee | X | X |

5.     Recent findings demonstrate that "children in Côte d'Ivoire engage in the worst

forms of child labor in the harvesting of cocoa."  Ivory Coast's "cocoa sector employed an

estimated 1,203,473 child laborers ages 5 to 17, of which 95.9 percent were engaged in

hazardous work in cocoa production."  Such work includes burning and clearing fields with

machetes, spraying pesticides, using sharp tools to break open cocoa pods, and carrying heavy

loads of cocoa pods and water.[3]

---

[1] http://www.ilo.org/ipec/facts/WorstFormsofChildLabour/lang--en/index.htm.

[2] http://www.dol.gov/ilab/reports/child-labor/list-of-goods/.

[3] https://www.dol.gov/sites/default/files/documents/ilab/reports/child-labor/CotedIvoire.pdf.





---

[4] Brian O'Keefe, *Behind a Bettersweet Industry*, Fortune (March 1, 2016), http://fortune.com/big-chocolate-child-labor/.

[5] https://www.confectionerynews.com/Article/2014/09/08/Cocoa-child-slavery-case-against-Nestle-ADM-and-Cargill-proceeds.





---

[6] http://valuenetworkissues.blogspot.com/2016/03/child-labor-and-chocolate_4.html.

[7] https://www.shreveporttimes.com/story/news/2016/01/13/tulane-report-highlights-child-labor-trends-chocolate-production/77697010/.

6.     The Bureau of International Labor Affairs of the U.S. Department of Labor also reports that some of these "children from within Côte d'Ivoire, as well as migrant children from Benin, Burkina Faso, Guinea, Mali, Nigeria, and Togo, are working under conditions of forced labor on Ivoirian cocoa farms.  Based on the most recently available estimate from Tulane University, over 4,000 children work in conditions of forced labor in the production of cocoa in Côte d'Ivoire.  Some children are sold by their parents to traffickers, some are kidnapped, and others migrate willingly but fall victim to traffickers who sell them to recruiters or farmers, where they end up in conditions of bonded labor.  Some farmers buy the children and refuse to let them leave the farm until the debt of their purchase has been worked off.  The children are frequently not paid for their work; some of their wages are paid to the recruiter or trafficker.  These children are held against their will on isolated farms, are locked in their living quarters at night, and are threatened and beaten if they attempt to escape.  They are punished by their employers with physical abuse.  They are forced to work long hours, including overtime, and are required to work even when they are sick.  Some children are denied sufficient food by their traffickers and employers.  Some children are forced to perform dangerous tasks, including carrying heavy loads, using machetes and sharp tools, and applying pesticides and fertilizers."[8]

7.     Moreover, a July 30, 2015, report entitled "Survey Research on Child Labor in West African Cocoa Growing Areas," prepared by the Payson Center for International Development of Tulane University and sponsored by the U.S. Department of Labor, found that during the time period from 2013 to 2014 over 1.1 million children in Ivory Coast were engaged in the most common Worst Forms of Child Labor, hazardous work, including the use of

---

[8] http://www.dol.gov/ilab/reports/child-labor/list-of-products/index-country.htm#Cote-dIvoire.

dangerous tools, transport of heavy loads, and exposure to toxic substances.  This was up from the 791,181 children engaged in such work at the time of the last survey in 2008 to 2009.  Put another way, the 22% of children engaged in such labor in 2008 to 2009 had increased to 31% of children in 2013 and 2014.[9]

8.      "The USDOL-funded research found that over half of the children working on cocoa farms have been injured in work-related activities."[10]  The 2015 Payson report found that 37% of those working in cocoa production experienced wounds/cuts while performing agricultural work and 11% experienced muscle pain.  Thirty-one percent of children working in cocoa production experienced "very bad pain" when injured, and 11% were unable to continue working after being injured.[11]

9.      And on September 2, 2015, the Fair Labor Association released the results of its audit of Nestlé, finding continued evidence of children younger than fifteen working on Ivory Coast farms supplying the chocolate manufacturer.  These children "were expected to work in hazardous conditions and carry out dangerous tasks, including using machetes and transporting heavy loads."  And the Fair Labor Association "found evidence of forced labour, with a young worker not receiving any salary for a year's work at a farm."  In response, a Nestlé spokesperson stated that "no company sourcing cocoa from Ivory Coast can guarantee that it has completely removed the risk of child labour from its supply chain."[12]

---

[9] http://www.childlaborcocoa.org/index.php/2013-14-final-report.

[10] http://www.dol.gov/ilab/issues/child-labor/cocoa/.

[11] http://www.childlaborcocoa.org/index.php/2013-14-final-report.

[12] http://www.theguardian.com/global-development-professionals-network/2015/sep/02/child-labour-on-nestle-farms-chocolate-giants-problems-continue.

COMPLAINT                                          - 6 -

10.     Much of the world's chocolate is thus quite literally brought to us by the back-breaking labor of children, in many cases under conditions of slavery.

11.     Notwithstanding its awareness of the Worst Forms of Child Labor used to produce the cocoa beans used to make its Chocolate Products, Nestlé does not disclose this to consumers at the point of purchase.

12.     That the Worst Forms of Child Labor are in Nestlé's supply chain for its Chocolate Products is material to consumers not wishing to support such labor with their purchasing power.  In the course of marketing and selling its Chocolate Products, however, Nestlé materially omits and does not disclose that its Chocolate Products have child and slave labor in the supply chain.  Furthermore, Nestlé does not disclose that despite its awareness that child and slave labor is being used in its supply chains, Nestlé has not required its suppliers to remedy this human tragedy.  Nestlé, as one of the largest companies in the world, can dictate the terms by which cocoa beans are produced and supplied to it, including the labor conditions in the supply chain.  But through its own inadequate efforts over the course of decades Nestlé is presently not able to trace all of the cocoa beans that make up its Chocolate Products back to the cocoa plantations on which they are grown, much less ensure that the cocoa beans are not the product of child or slave labor.[13]  And meanwhile Nestlé continues to profit from the child and slave labor that is used to make its Chocolate Products.  This is shameful.  Had Plaintiff and Class Members known the truth, they would not have purchased Nestlé's Chocolate Products or paid as much for them.

---

[13] http://www.nestle.com/csv/rural-development-responsible-sourcing/responsible-sourcing (2015 objective includes ability to trace 40% of cocoa supplies).

13.     Nestlé's material omissions and failure to disclose is all the more appalling considering that Nestlé has identified the protection of human rights, including the abolition of child labor and the elimination of all forms of forced or compulsory labor as one of its Corporate Business Principals.[14]  But Nestlé does not live up to its own ideals.

14.     Accordingly, Nestlé's conduct described herein violates the Massachusetts Consumer Protection Law, and results in its unjust enrichment.  Plaintiff brings this action on behalf of a Massachusetts class for damages, restitution, and injunctive relief, and any other relief deemed appropriate by the court to which this case is assigned.

## II.      PARTIES

15.     Plaintiff Danell Tomasella is and was at all relevant times a citizen of the State of Massachusetts and resides in Buzzards Bay, Massachusetts.  Plaintiff Tomasella has purchased Nestlé Chocolate Products, including Toll House refrigerated cookie mix, at various retail stores including Stop & Shop in Plymouth, Massachusetts, from 2014 through the present.  Plaintiff Tomasella saw the product packaging and labeling in retail stores where she purchased the Chocolate Products.  Plaintiff would not have purchased the Chocolate Products or paid as much for them had Nestlé disclosed the truth about the child and slave labor in the supply chain. Plaintiff Tomasella seeks damages, restitution, and injunctive relief requiring Nestlé to cease its deceptive marketing.

16.     Defendant Nestlé USA, Inc. is a nationwide manufacturer and distributor of food and beverage products.  Nestlé USA, Inc. is incorporated in Delaware with its principal place of business located at 800 Brand Blvd., Glendale, CA 91203.

---

[14] The Nestlé Corporate Business Principles, June 2010, *available at* http://www.research. nestle.com/asset-library/documents/corporate-business-principles-en.pdf (last visited Aug. 17, 2015).

### III.    JURISDICTION AND VENUE

17.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C.

§ 1332(d), because the amount in controversy for the Class exceeds $5,000,000, and the Class

includes members who are citizens of a different state than Defendant.

18.     This Court has personal jurisdiction over Defendant because it has offices and

conducts substantial business in this district and throughout the State of Massachusetts.

19.     Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendant has

marketed and sold Chocolate Products within this district, and a substantial number of the acts

and omissions alleged herein occurred within this district.

### IV.    FACTUAL ALLEGATIONS

**A.    The Worst Forms of Child Labor in the Ivory Coast Are Used to Produce Nestlé's Chocolate Products.**

20.     Ivory Coast is the world's largest producer of cocoa, the raw ingredient that

makes chocolate,[15] an industry estimated to be worth more than $90 billion a year.[16]  According

to the World Cocoa Foundation, "Cote d'Ivoire supplies more than 40% of the world's cocoa."[17]

As a major chocolate manufacturer, Nestle has a strong presence in the Ivory Coast.  In Abidjan,

the largest city and chief port of the Ivory Coast, Nestle has a Research and Development Centre

where it propagates a million cocoa trees annually for the 30,000 farmers in the Ivory Coast from

which it obtains cocoa beans.[18]

---

[15] http://www.theguardian.com/global-development-professionals-network/2015/sep/02/child-labour-on-nestle-farms-chocolate-giants-problems-continue.

[16] http://www.bbc.com/news/world-africa-18644870.

[17] http://worldcocoafoundation.org/wp-content/uploads/Economic_Profile_of_the_US_Chocolate_Industry_2011.pdf.

[18] http://www.nestlecocoaplan.com/wp-content/uploads/2012/06/ABOUT-THE-NESTLE-COCOA-PLAN.pdf; http://www.nestlecocoaplan.com/infographic-tackling-child-labour-in-our-cocoa-supply-chain/.

COMPLAINT                                     - 9 -

21.     Nestle acknowledges, as it must, that "there are children working on farms in Cote d'Ivoire in areas where we source cocoa."[19]  Specifically, Nestle acknowledges that "[t]oo many children are involved in hazardous farming tasks or work on farms instead of going to school," that "there are situations of children carrying out unsafe tasks, using dangerous tools, carrying loads that are too heavy, suffering injuries and missing out on schooling," and that "[s]ome producers are also known to seek cheap labour by illegally using forced child or adult labour."[20]  Despite these acknowledgements, Nestle makes no disclosure regarding child or slave labor to consumers at the point of sale and the vast majority of consumers are unaware of these human rights abuses.

22.     As the California Attorney General stated in an amicus brief filed in similar litigation pending in California: "consumers are often unaware that the products they purchase have been made using slavery."

23.     Offering the excuse that "[n]o company sourcing cocoa here can guarantee they've eliminated the risk of children working in their supply chain," Nestle instead offers the false assurances that it is "determined to tackle the problem"[21] and that its Nestle Cocoa Plan (launched in 2009)[22] is helping to "eliminate the use of child labour" and to "stamp out forced labour practices" in the Ivorian cocoa industry.[23]  Nestle wrongly asserts that in the last decade,

---

[19] http://www.nestlecocoaplan.com/infographic-tackling-child-labour-in-our-cocoa-supply-chain/.

[20] http://www.nestlecocoaplan.com/wp-content/uploads/2012/06/ABOUT-THE-NESTLE-COCOA-PLAN.pdf.

[21] http://www.nestlecocoaplan.com/infographic-tackling-child-labour-in-our-cocoa-supply-chain/.

[22] http://www.nestle.com/media/newsandfeatures/nestle-launches-the-cocoa-plan.

[23] https://www.nestle.co.nz/media/pressreleases/sustainable-cocoa.

"there have been positive changes and evidence of … fewer children exposed to unsafe farming tasks," such that "progress is being made."[24]  But a 2015 report sponsored by the United States Department of Labor found that children engaged in hazardous work in Ivorian cocoa production has increased over 40% from 2008/09 to 2013/14.

24.     Indeed, Nestle has been falsely assuring those who are aware of the human rights abuses that it will end child and slave labor in its Ivorian Coast supply chain since 2001. Meanwhile an entire generation of West African children has suffered due to Nestlé's empty promises.

25.     As the Food Empowerment Project describes in its article entitled Child Labor and Slavery in the Chocolate Industry, a "child's workday typically begins at six in the morning and ends in the evening.[18] Some of the children use chainsaws to clear the forests.[17] Other children climb the cocoa trees to cut bean pods using a machete. These large, heavy, dangerous knives are the standard tools for children on the cocoa farms…. Once they cut the bean pods from the trees, the children pack the pods into sacks that weigh more than 100 pounds when full and drag them through the forest.[25]

26.     "Aly Diabate, a former cocoa slave, said, 'Some of the bags were taller than me. It took two people to put the bag on my head. And when you didn't hurry, you were beaten.' Holding a single large pod in one hand, each child has to strike the pod with a machete and pry it open with the tip of the blade to expose the cocoa beans.  Every strike of the machete has the potential to slice a child's flesh. The majority of children have scars on their hands, arms, legs or

---

[24] http://www.nestlecocoaplan.com/wp-content/uploads/2012/06/ABOUT-THE-NESTLE-COCOA-PLAN.pdf.

[25] http://www.foodispower.org/slavery-chocolate/.

shoulders from the machetes.  In addition to the hazards of using machetes, children are also

exposed to agricultural chemicals on cocoa farms in Western Africa."[26]

27.　　"Cases often involve acts of physical violence, such as being whipped for

working slowly or trying to escape.  Reporters have also documented cases where children and

adults were locked in at night to prevent them from escaping.  Former cocoa slave Aly Diabate

told reporters, 'The beatings were a part of my life.  I had seen others who tried to escape.  When

they tried, they were severely beaten.'  Drissa, a recently freed slave who had never even tasted

chocolate, experienced similar circumstances.  When asked what he would tell people who eat

chocolate made from slave labor, he replied that they enjoyed something that he suffered to

make, adding, 'When people eat chocolate, they are eating my flesh.'"[27]

28.　　In *DOE I v. Nestlé USA Inc.*, the Ninth Circuit stated:

> The use of child slave labor in the Ivory Coast is a humanitarian
> tragedy.  Studies by International Labour Organization, UNICEF,
> the Department of State, and numerous other organizations have
> confirmed that thousands of children are forced to work without
> pay in the Ivorian economy.  Besides the obvious moral
> implications, this widespread use of child slavery contributes to
> poverty in the Ivory Coast, degrades its victims by treating them as
> commodities, and causes long-term mental and physical trauma.[28]

**1.　　In 2001 the Industry Agrees to the Harkin-Engel Protocol and Promises to
Eliminate the Worst Forms of Child Labor in the Ivory Coast by 2005.**

29.　　In 2001, the Chocolate Manufacturers Association of the United States of

America signed the *Protocol for the Growing and Processing of Cocoa Beans and their*

*Derivative Products in a Manner that Complies with ILO Convention 182 Concerning the*

*Prohibition and Immediate Action for the Elimination of the Worst Forms of Child Labor*

---

[26] *Id.*

[27] *Id.*

[28] 766 F.3d 1013, 1017 (9th Cir. 2014).

("Harkin-Engel Protocol").[29]  Nestle was a signatory to this agreement, which "acknowledged the problem of forced child labor in West Africa."  The Harkin-Engel Protocol noted that "while the scope of the problem is uncertain, the occurrence of the worst forms of child labor in the growing and processing of cocoa beans and their derivative products is simply unacceptable."  Accordingly, the industry committed to develop and implement standards of public certifications by July 1, 2005, "that cocoa beans and their derivative products have been grown and/or processed without any of the worst forms of child labor."  Nestle, and the other signatories, promised to work "wholeheartedly…to fulfill the letter and spirit of this Protocol, and to do so in accordance with the deadlines prescribed herein."[30]

**2.    The Industry Breaks this Promise Repeatedly in a Series of Follow-up Statements Postponing Their Deadline to 2008, to 2010, and now to 2020.**

30.    In a series of subsequent Joint Statement, the chocolate industry effectively kicks the can down the road on its promises.

31.    On July 1, 2005, the industry issued a Joint Statement acknowledging that "[i]n September 2001, chocolate and cocoa industry representatives signed an agreement, developed in partnership with Senator Harkin and Representative Engel, to eliminate the worst forms of child labor in the growing of cocoa beans and their derivative products from West Africa.  But "the July 1, 2005 deadline will not be fully met."  That being said, the industry "assured Sen. Harkin and Rep. Engel that it is fully committed to achieving a certification system, which can be expanded across the cocoa-growing areas of West Africa and will cover 50% of the cocoa growing areas of Cote d'Ivoire and Ghana within three years."  Senator Harkin stated, that he

---

[29] The protocol was established by Senator Tom Harkin and Congressman Eliot Engel. http://www.ilo.org/washington/areas/elimination-of-the-worst-forms-of-child-labor/WCMS_159486/lang--en/index.htm.

[30] mvoplatform.nl/about-us/publications-en/Publication_2380.

was "disappointed that the July 1 deadline established in the Protocol was not fully met," but he was "pleased that they have committed to redouble their efforts to create a certification system and eliminate the worst forms of child labor and forced labor in the cocoa fields and throughout the supply chain."[31]

32.     Unable to meet the new self-imposed deadline, on June 16, 2008, the industry issued another Joint Statement promising "to have a sector-wide independently verified certification process fully in place across each country's cocoa-growing sector by the end of 2010."[32]

33.     Again unable to meet the new self-imposed deadline, on September 13, 2010, the industry issued yet another Joint Statement promising "[b]y 2020, the establishment and implementation of a credible and transparent sector-wide monitoring system across cocoa growing regions in the two countries" and – instead of the elimination promised in 2001 – "the worst forms of child labor as defined by ILO Convention 182 in the cocoa sectors of Côte d'Ivoire and Ghana will be reduced by 70 percent."[33]

**3.     Meanwhile the Worst Forms of Child Labor in the Ivory Coast Continue – with a Recent Report Commissioned by the U.S. Department of Labor Finding That They Have Become *Even More Prevalent* – Despite Nestlé's Assurances to the Contrary.**

34.     In order to assess the chocolate industry's progress in meeting the Harkin-Engle Protocol, the Department of Labor contracted with the Payson Center for International Development of Tulane University, awarding it a $4.3 million contract in 2006.

---

[31] www.cacao.gouv.ci/commun/documents/jointstatementSenateurTomHarkin.pdf.

[32] http://www.csrwire.com/press_releases/14132-Joint-Statement-from-U-S-Senator-Tom-Harkin-Representative-Eliot-Engel-and-the-Chocolate-and-Cocoa-Industry-on-the-Implementation-of-the-Harkin-Engel-Protocol-.

[33] http://www.dol.gov/ilab/projects/summaries/GhanaSignedDeclaration.pdf; http://www.dol.gov/ilab/projects/summaries/CocoaFrameworkAction.pdf.

35.     "As part of the Tulane-USDOL contract, Tulane studies progress made towards the elimination of the Worst Forms of Child Labor (WFCL) and Forced Adult Labor (FAL) in the cocoa sector of Cote d'Ivoire and Ghana and towards meeting obligations under the Harkin-Engel Protocol, a voluntary agreement against the WFCL and FAL signed in September 2001 by the Chocolate Manufacturers Association (CMA) and the World Cocoa Foundation (WCF) and witnessed by the congressional offices of U.S. Sen. Tom Harkin (D-Iowa) and U.S. Rep. Eliot Engel (D-N.Y.)."[34]

36.     "Since the start of the Tulane-USDOL collaboration in October 2006, Tulane has implemented several representative population-based household surveys of child labor in the cocoa sector, examined efforts by the international cocoa/chocolate industry and the governments of Côte d'Ivoire and Ghana to establish child labor monitoring, certification and verification systems, studied remediation activities and other interventions against the WFCL and FAL in the cocoa sector financed by the cocoa/chocolate industry and trained government officials in Cote d'Ivoire and Ghana to remediate the WFCL and monitor the number of children working in this sector. Tulane's research findings are reported in annual reports to the U.S. Congress.[35]

37.     On March 31, 2011, the Payson Center released its report entitled, "Oversight of Public and Private Initiatives to Eliminate the Worst Forms of Child Labor in the Cocoa Section in Cote d'Ivoire and Ghana."[36]  The report found that the chocolate industry's funding "has not been sufficient in light of its commitment to eliminate [the Worst Forms of Child Labor] in the

---

[34] http://childlabor-payson.org/.

[35] *Id.*

[36] http://childlabor-payson.org/Tulane%20Final%20Report.pdf.

cocoa sectors of Ghana and Cote d'Ivoire as per Article 1 of the Protocol."  The report found that "important provisions of the Protocol have not yet been realized." For example, the chocolate industry has not met Article 6, "a key tenet of the Protocol with a 2005 deadline," because the chocolate industry "has only partly developed and not enforced industry-wide standards upholding ILO Convention 182 in the cocoa sectors of Cote d'Ivoire and Ghana."  Rather, "the present level of Industry engagement of product certifiers allows these certifiers to cover only a small fraction of cocoa producing regions in each country."

38.     The 2011 report further found that the chocolate industry had failed to achieve "its Joint Statement 2005 commitment to cover 50 percent of the two countries' cocoa-producing areas by July 2008 and has yet to accomplish the goals of the Joint Statement 2008 commitment of reaching 100% of the cocoa growing regions of both countries with remediation activities by the end of 2010."  And it was not even close – the report found that remediation activities had only reached 3.8% of the cocoa growing region in the Ivory Coast.[37]  Thus, the children in the region continue to engage in the Worst Forms of Child Labor, including hazardous work like carrying heavy loads, weeding and breaking cocoa pods using machetes, and spraying chemicals without any protective gear.

39.     The next year, Nestle "partnered with the Fair Labor Association (FLA) to investigate whether children are working on cocoa farms which are supplying its factories."[38] The answer, unsurprisingly, was yes.  The FLA found that "child labour is a reality on cocoa farms in Côte d'Ivoire."[39]  Reiterating the promise made a decade prior, Nestle vowed to engage

---

[37] *Id.*

[38] http://www.nestlecocoaplan.com/.

[39] http://www.nestle.com/Media/NewsAndFeatures/fla-report-cocoa;
http://www.nestlecocoaplan.com/nestle-sets-out-actions-to-address-child-labour/.

in "a new effort to prevent the use of child labour in cocoa-growing areas" because the "use of child labour in our cocoa supply chain goes against everything we stand for."  Nestlé's Executive Vice President for Operations, José Lopez, stated that "no company sourcing cocoa from Côte d'Ivoire can guarantee that it doesn't happen, but what we can say is that tackling child labour is a top priority for our company."  Once again, Nestle assured those aware of the issue that it "is committed to the eradication of child labour in its cocoa supply chain."  Once again, it pledged "to create a robust monitoring and remedy scheme," as it had in 2001.  And, once again, Nestle reiterated that it was fully supportive of a "plan directed against child trafficking."[40]

40.     And Nestlé acknowledged the FLA's finding that although "Nestlé does not own or operate farms in Côte d'Ivoire," it "is well positioned to make a positive impact on the livelihoods of workers in the cocoa supply chain … due to its leverage with its suppliers and the volume of cocoa beans it procures."[41]  Nestle has had the opportunity to take effective advantage of that leverage since 2001 to eliminate child and slave labor from its Ivorian supply chain as it promised, but it has failed to do so – and accordingly it has failed an entire generation of West African children.

41.     As CNN reported in 2012, "[d]uring the course of an investigation for [it]'s Freedom Project initiative – an investigation that went deep into the cocoa fields of Ivory Coast – a team of CNN journalists found that child labor, trafficking and slavery are rife in an industry that produces some of the world's best-known brands."[42]  CNN reported on its encounter with one such modern child slave:

_____

[40] *Id.*

[41] *Id.*

[42] http://thecnnfreedomproject.blogs.cnn.com/2012/01/19/child-slavery-and-chocolate-all-too-easy-to-find/.

> Chocolate's billion-dollar industry starts with workers like
> Abdul. He squats with a gang of a dozen harvesters on an Ivory
> Coast farm.
>
> Abdul holds the yellow cocoa pod lengthwise and gives it two
> quick cracks, snapping it open to reveal milky white cocoa
> beans. He dumps the beans on a growing pile.
>
> Abdul is 10 years old, a three-year veteran of the job.
>
> He has never tasted chocolate.
>
> [¶]
>
> When Abdul's mother died, a stranger brought him across the
> border to the farm. Abdul says all he's given is a little food, the
> torn clothes on his back, and an occasional tip from the farmer.
> Abdul is a modern child slave.

42.     As the U.S. Department of Labor itself reported in 2013, "children in Côte d'Ivoire continue to engage in the worst forms of child labor in agriculture, particularly on cocoa farms, sometimes under conditions of forced labor."  The DOL further reported that over half of these children "were estimated to report injuries from dangerous activities" and that "[c]hildren from neighboring West African countries are trafficked into Côte d'Ivoire for agricultural labor, especially in cocoa production."[43]

43.     The most recent report prepared by the Payson Center for International Development of Tulane University and sponsored by the U.S. Department of Labor is dated July 30, 2015, and entitled "Survey Research on Child Labor in West African Cocoa Growing

---

[43] http://www.dol.gov/ilab/reports/child-labor/findings/2013TDA/cotedivoire.pdf.

Areas."  The summary document for the ninety-nine page report states that "*the numbers of children working in cocoa production, in child labor in cocoa production, and in hazardous work in cocoa production have increased from 2008/09 to 2013/14*," with the number of children doing hazardous work in cocoa production growing by 46%.[44]

44.     Thus, Fair Trade International reported on August 4, 2015, that the "2013/2014 Survey Research on Child Labor in West African Cocoa-Growing Areas released last week by the Tulane University shows that child labor in cocoa production is on the rise in West Africa."[45]

45.     More specifically, the 2015 Payson Report found that during the time period from 2013 to 2014 over 1.1 million children in the Ivory Coast were engaged in the most common Worst Forms of Child Labor, hazardous work, including the use of dangerous tools, transport of heavy loads, and exposure to pesticides.  This was up from the 791,181 children engaged in such work at the time of the last survey in 2008 to 2009.  Put another way, the 22% of children engaged in such labor in 2008 to 2009 had increased to 31% of children in 2013 and 2014.[46]

46.     "The 2015 Payson Report concluded that "[a]fter increases in the total number of children working in the cocoa sector in both countries combined, 1.5 million children still have to be removed from hazardous work by 2020 in order to reach the Framework of Action target." However, "[w]ith production growing and increasing global demand for cocoa beans, production methods and/or child labor mitigation strategies need to change drastically to achieve major progress."[47]

---

[44] http://www.childlaborcocoa.org/index.php/2013-14-final-report.

[45] http://fairtradeamerica.org/post/125861349722/childrens-involvement-in-west-african-cocoa

[46] http://www.childlaborcocoa.org/index.php/2013-14-final-report.

[47] *Id*.

47.     Right on the heels of the July 30, 2015 Payson Report, the Fair Labor Association released the results of its audit of Nestle on September 2, 2015.  The FLA explained that "[f]or Nestlé in Ivory Coast, the FLA has been monitoring since 2013 a growing portion of its cocoa supply served by the Nestlé Cocoa Plan (NCP). As of mid-2015, the NCP represented around 25 percent of Nestlé's total cocoa supply chain."[48]  In other words, Nestle had the FLA audit the subset of its supplying cocoa farms where it had engaged in the most efforts to eradicate child and slave labor.  The FLA assessors visited a sample of 260 farms, less than 1% of the 30,000 that supply Nestle in the Ivory Coast.[49]

48.     The 2015 FLA report found that "[c]hildren younger than 15 continue to work at cocoa farms connected to Nestle, more than a decade after the food company promised to end the use of child labour in its supply chain."  These children "were expected to work in hazardous conditions and carry out dangerous tasks, including using machetes and transporting heavy loads."  And the Fair Labor Association "found evidence of forced labour, with a young worker not receiving any salary for a year's work at a farm."

49.     In response, a Nestle spokesperson reiterated the familiar refrain that "no company sourcing cocoa from Ivory Coast can guarantee that it has completely removed the risk of child labour from its supply chain."[50]  And Nestle continues to claim it has made progress

---

[48] http://www.fairlabor.org/report/2014-assessments-nestl%C3%A9-cocoa-supply-chain-ivory-coast.

[49] http://www.fairlabor.org/sites/default/files/documents/reports/september_2015_nestle_executive_summary.pdf.

[50] Child Labour on Nestle Farms: Chocolate Giant's Problems Continue: Auditors completing their annual report continue to find evidence of child labour on Ivory Coast farms supplying Nestle, Sept. 2, 2015, available at http://www.theguardian.com/global-development-professionals-network/2015/sep/02/child-labour-on-nestle-farms-chocolate-giants-problems-continue.

COMPLAINT                                    - 20 -

towards meeting the Harkin-Engel Protocol.  But claims of progress are flatly contradicted the

2015 Payson report finding that children engaged in hazardous work in Ivorian cocoa production

has increased over 40% from 2008/09 to 2013/14.

50.     In any event, claims of progress – true or not – do not free Nestle from its

obligation to provide disclosures to consumers at the point of sale regarding the existence of

child and slave labor that indisputably remains in Nestlé's supply chain for Chocolate Products.

And even were the Ivorian human rights abuses a problem that Nestle was powerless to solve (it

is not), Nestle would still be obligated to disclose to consumers at the point of sale the existence

of child and slave labor in its supply chain for Chocolate Products.  The vast majority of

consumers are not aware of the human rights abuses and reasonable consumers would not have

purchased Nestle Chocolate Products had they known the truth.

**B.      Nestlé Fails to Disclose the Use of the Worst Forms of Child Labor in Its Supply Chain.**

51.     As Nestle explains in its Cocoa Plan, in the Ivory Coast, the "journey from the

cocoa bean to the chocolate … starts with the farmer, who sells his crop either to a cooperative

or a pisteur. There are about 700 cooperatives in the country and around 5,000 independent

pisteurs.  These are roving buyers/salesmen who call on farmers to buy as much cocoa as they

can. They're called pisteurs because they go up and down the pistes or rough tracks which lead

to the cocoa villages.  The cooperatives and pisteurs sell to larger middlemen called traitants,

who in turn sell to exporters, who sell to traders who sell to processors."  "The beans from many

different trees and farms are then combined and increasingly larger quantities are sold from one

buyer to the next until the beans reach the shipping port. Here, beans from literally thousands of villages are combined into large shipments to countries across the world."[51]

52.     According to the World Cocoa Foundation, "47% of the total U.S. imports of cocoa beans come from Cote d'Ivoire."[52]

53.     Working with its office in the Ivory Coast, U.S. customs records show that Nestle imports thousands of tons of raw cocoa beans and cocoa paste into the United States, using Nestle USA Inc.'s Glendale, California, and Rochester Hills, Michigan, locations as well as its Mexican subsidiary, Nestle Mexico S.A., as its U.S. consignees.  Nestle uses these raw cocoa beans and cocoa paste to manufacture its Chocolate Products, which are distributed to retail locations throughout the country.

54.     At the retail location, a consumer reviewing the packaging for Nestlé's Chocolate Products will find no disclosure that there is child and/or slave labor in the supply chain:



---

[51] http://www.nestlecocoaplan.com/wp-content/uploads/2012/06/ABOUT-THE-NESTLE-COCOA-PLAN.pdf.

[52] http://worldcocoafoundation.org/wp-content/uploads/Economic_Profile_of_the_US_Chocolate_Industry_2011.pdf.



55.     And this lack of disclosure of child and/or slave labor in the supply chain for

Nestlé's Chocolate Products is even more egregious for those products labeled as part of Nestlé's

Cocoa Plan:



56.     The label innocuously states that "The Nestle Cocoa Plan works with UTZ Certified to help improve the lives of cocoa farmers and the quality of their products" – so as to not tip off the vast majority of consumers who do not know about the Worst Forms of Child Labor in the supply chain.  For those who are aware, UTZ is a certification that does not permit child labor.[53]

57.     Nestle states that it "works with partners UTZ Certified and Fairtrade to certify the cocoa produced by Nestlé Cocoa Plan co-operatives as part of its efforts to promote sustainability and tackle labour problems."[54]  But the farms supplying the Nestle Cocoa Plan cocoa beans were the one that the Fair Labor Association audited and on which it found child and slave labor violations, as discussed above.

58.     By the end of 2013, Nestle claimed to have sourced enough UTZ certified cocoa beans (7%) to produce its entire line of Crunch everyday bars, and by the end of 2014, enough (30%) to produce Toll House Milk Chocolate and Dark Chocolate Morsels, Buncha Crunch, Crunch Girl Scouts Candy Bars, Butterfinger Peanut Butter Cups, Hot Cocoa and Nesquik Ready-to-Drink.[55]  In the U.S., Nestlé said it was "committed to increasing the quantities of Nestlé Cocoa Plan and UTZ certified cocoa beans purchased each year, with an ultimate goal of sourcing all cocoa needed in the U.S. with Nestlé Cocoa Plan."[56]  In 2015, Nestlé reported in its Nestlé USA Creating Shared Value report that "[a]ccelerated activities in 2016 will allow us to

---

[53] https://www.utzcertified.org/en/aboututzcertified/how-utz-works.

[54] http://www.nestle.com/Media/NewsAndFeatures/fla-report-cocoa; http://www.nestlecocoaplan.com/nestle-sets-out-actions-to-address-child-labour/.

[55] http://www.nestleusa.com/asset-library/documents/creatingsharedvalue/download_report/nusa_csv_report_2013%20final%2006062414%20digital.pdf; http://www.nestlecocoaplan.com/partners-focus-regions/.

[56] http://www.nestlecocoaplan.com/partners-focus-regions/.

achieve 100% of our cocoa sourced under the plan and UTZ certification ahead of schedule for applicable and relevant beverage, baking and confections products."[57]

59.     Nestlé later confirmed that it achieved this goal in 2016.[58]  But note the change in language: it claimed to have achieved the goal "of sourcing UTZ-certified, sustainable cocoa *equal to amounts* needed to supply 100% of our confections and snacks portfolio and Nestlé Toll House morsels" in the U.S.[59]  Worldwide, by the end of 2015, Nestlé was still only at 34%,[60] where it remained in 2017,[61] and then projected that it would reach only 57% in 2020.[62]

60.     This matters, because, as discussed above, "at the beginning of the supply chain, the beans from many different trees and farms are then combined and increasingly larger quantities are sold from one buyer to the next until the beans reach the shipping port," where "beans from literally thousands of villages are combined into large shipments to countries across the world."  So legitimately harvested cocoa beans and those harvested using the worst forms of child labor are all co-mingled, such that Nestle is unable to trace the products it sells to confirm they were not made using hazardous and/or forced child labor.

61.     Thus, although Nestle achieved a growing proportion of U.S. beans covered by its Cocoa Plan during the class period, admittedly these cocoa beans were *equal to amounts* needed to supply its U.S. sales—not that Cocoa Plan chocolate bars were themselves free of hazardous

---

[57] http://www.nestleusa.com/asset-library/documents/pdfs/nestle-usa-csv-report-2015.pdf.

[58] https://www.nestleusa.com/csv/what-is-csv.

[59] *Id*. (emphasis added).

[60] https://www.nestle.com/csv/communities/nestle-cocoa-plan.

[61] https://www.nestlecocoaplanreport.com/sites/default/files/2017-10/NestleCocoaPlanReport2017_EN_0.pdf, at 6.

[62] *Id*. at 49; https://www.nestlecocoaplanreport.com/info/our-ambitions.

and/or forced child labor.  And it is unclear how much of Nestlé's cocoa butter (the other main ingredient in chocolate besides the cocoa mass) is certified.

62.    In sum, nowhere on the packaging for any of the Chocolate Products is there any disclosure to the consumer of the child and/or slave labor in Nestle's supply chain.  This disclosure should be on all of the Chocolate Products, including those covered by Nestle's Cocoa Plan because, even then, Nestle is unable to say that the products themselves are not made with hazardous and/or forced child labor.

## C.    Nestlé Recognizes that the Use of Child or Slave Labor in its Supply Chain Is Wrong.

63.    Nestlé identifies the protection of human rights in its business activities as one of its ten Corporate Business Principles stating that it "fully support[s] the United Nations Global Compact's (UNGC) guiding principles on human rights and labour and aim[s] to provide an example of good human rights and labour practices throughout our business activities."[63]  In describing the relationship with Nestlé's suppliers, the Corporate Business Principles state: "We require our suppliers, agents, subcontractors and their employees to demonstrate honesty, integrity and fairness, and to adhere to our non-negotiable standards" found in Nestlé's Supplier Code.[64]

64.    The first of four pillars contained in Nestlé's Supplier Code is the enforcement of human rights.  As part of the first pillar on human rights, Nestlé explicitly forbids child labor by its suppliers:  "The use of child labour by the Supplier is strictly prohibited, in line with ILO

---

[63] The Nestlé Corporate Business Principles, June 2010, 6, http://www.nestle.com/asset-library/.
documents/library/documents/corporate_governance/corporate-business-principles-en.pdf (last visited Aug. 17, 2015).

[64] *Id*. at 7.

Convention 138 on the Minimum Age, and Convention 182 on the Elimination of the Worst Forms of Child Labour.[65]

65.     Likewise, as part of the first pillar on human rights, Nestlé's explicitly forbids slave labor by its suppliers: "The Supplier must under no circumstances use, or in any other way benefit, from forced labour."[66]

66.     As alleged herein, Nestlé's use of Ivorian cocoa in the supply for its Chocolate Products violates the first pillar of its Supplier Code in both respects.

67.     Additionally, Nestlé's Supplier Code of Conduct demands that suppliers are "capable to disclose all the potential sources of primary origins…associated with deliveries made" and "reserves the right to ask suppliers to create… full supply chain mapping back to origin to facilitate assessment of upstream supply chain compliance."[67]  But Nestle does not actually ensure such compliance.

68.     In Nestlé's comprehensive "Nestlé in Society Full Report 2014," CEO of Nestlé S.A. Paul Bulcke's is quoted as stating to the United Nations Annual Forum on Business and Human Rights that "[h]aving the right policies, procedures and management systems is good and necessary but it is not enough. It is the implementation, how you behave on the ground and the relationships you establish with different stakeholders, which create the trust necessary to be successful over time, as a company and as a society."[68]  Nestle has violated this trust with consumers.

---

[65] The Nestlé Supplier Code of Conduct, Dec. 2013, 2, http://www.nestle.com/asset-library/ documents/library/documents/suppliers/supplier-code-english.pdf (last visited Aug. 17, 2015).

[66] *Id*.

[67] *Id*. at 4.

[68] Nestlé in Society Full Report 2014, 214, http://storage.nestle.com/nestle-society-full-2014/index.html#195/z (last visited Aug. 17, 2015).

69.     In summary, although Nestlé recognizes that the use of child and/or slave labor in its supply chain is wrong and its corporate business principles and supplier code explicitly forbid child and slave labor by its suppliers, it materially omits to disclose to consumers at the point of purchase that there is child and/or slave labor in its supply chain for the cocoa beans used to make its Chocolate Products.

**D.     Nestlé's Use of the Worst Forms of Child Labor in Its Chocolate Products Supply Chain Is Material to Consumers Who Are Generally Left Unaware Without Disclosure at the Point of Sale.**

70.     Consumers have become sensitive to the human cost behind the products that they buy.  This sensitivity transcends industries and ranges from products as diverse as clothing to coffee.

71.     A Harvard University study examined consumer willingness to pay a premium for coffee certified as Fair Trade on eBay.[69]  A Fair Trade certification requires, amongst other things, that the producer not use slave and child labor in the production of its coffee.[70]  The study found that consumers in online auctions were willing to pay an average of 23% more for coffee certified as Fair Trade.[71]

72.     A 2006 study by researchers at the University of Michigan analyzed consumer purchases to determining consumer willingness to pay a premium for athletic socks marked with a Good Working Conditions ("GWC") label.[72]  The study concluded that 30% of consumers in a

---

[69] *See* Michael J. Hiscox, Michael Broukhim,& Claire S. Litwin, *Consumer Demand for Fair Trade: New Evidence From A Field Experiment Using eBay Auctions of Fresh Roasted Coffee* (Mar. 16, 2011), http://scholar.harvard.edu/files/hiscox/files/ consumerdemandfairlaborstandardsevidencecoffee.pdf (last visited Aug. 17, 2015).

[70] *Id*. at 4.

[71] *Id*. at 3, 23.

[72] Howard Kimeldorf, Rachel Meyers, Monica Prasad, & Ian Robinson, *Consumers with a Conscience: Will They Pay More?* (Winter 2006), 24 *available at*

working class neighborhood of Detroit were willing to pay a 20% price premium (from $1.00 to $1.20) for GWC labeled socks compared to non-GWC labeled socks.[73]

73.     A 2011 study lead by researchers at Harvard University studied consumer willingness to pay a premium for polo shirts sold with an SA8000 certification on eBay.[74]  The SA8000 certification prohibits the use of child labor and slave labor and discrimination based on race, gender, and religion.  The code mandates that workers be allowed to organize and bargain collectively with their employers.  The SA8000 code also requires that workplaces satisfy minimum health and safety standards, pay minimum (living) wages, and that overtime work is voluntary, limited, and paid at a premium.[75]  "On average, shoppers paid a 45% premium for labeled versus unlabeled shirts.  The findings suggest that there is substantial consumer support for fair labor standards, even among price-sensitive eBay shoppers."[76]

74.     Another survey by FishWise, a non-profit marine conservation organization, further elucidates consumer willingness to pay when there are human rights abuses in supply chains.  Eighty-eight percent of consumers stated that they would stop buying a product if it was associated with human rights abuses.[77]  The survey further revealed that 70% percent of

http://www.npr.org/documents/ 2013/may/consumer_conscience_study_ME_20130501.pdf (last visited Aug. 17, 2015).

[73] *Id.*

[74] Michael J. Hiscox, Michael Broukhim, Claire S. Litwin. Andrea Woloski, *Consumer Demand For Fair Labor Standards: Evidence From a Field Experiment on eBay* (Apr. 2011), 3 http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1811788 (last visited Aug. 17, 2015).

[75] *Id.* (citing http://www.sa-intl.org/_data/n_0001/resources/live/2008StdEnglishFinal.pdf) (last visited Aug. 17, 2015).

[76] Michael J. Hiscox, Michael Broukhim, Claire S. Litwin. Andrea Woloski, *Consumer Demand For Fair Labor Standards: Evidence From a Field Experiment on eBay* (Apr. 2011), 3, 22.

[77] FishWise, *Trafficked II: An updated summary of human rights abuses in the seafood industry* (2014), at p. 6, available at http://www.fishwise.org/services/human-rights.

consumers would pay more for a product certified to be free of human rights abuses.[78]  FishWise

noted that, "survey results indicate that human rights are important to seafood consumers and

many of them are willing to avoid high risk products and pay more for those that are certified to

be free of abuses."[79]

75.     These surveys establish that the child and slave labor in Defendant's supply chain

is material to consumers, who are generally unaware, assume otherwise, and would not have

purchased Defendant's Chocolate Products had they known the truth.

76.     Moreover, Nestlé has examined the "materiality" to its "stakeholders" of key

issues facing Nestlé worldwide.  Consumers of Nestlé products were among the stakeholders

surveyed.[80]  Nestlé found "[h]uman rights" to be of "significant" concern to consumers.  This

means "[p]romoting respect for the basic rights and freedoms to which all people are entitled" in:

Child labor; Labor rights; and Human rights in the upstream supply chain.[81]  Nestlé recognized

that "consumers and other stakeholders" are "increasingly looking for information" about not

just "where our ingredients originate" but "how they were produced."  And it stated that

"responsible sourcing," including "traceability and transparency throughout our supply chains,"

has "never been more important."[82]

---

[78] *Id.*

[79] *Id.* at 7.

[80] Nestlé, Nestlé in Society (2014) (full report), at p. 11, available at
http://www.nestle.com/asset-
library/documents/library/documents/corporate_social_responsibility/nestle-csv-full-report-
2014-en.pdf.

[81] *Id.* at 15, 197.

[82] *Id.* at 88.

77.     Further, point of sale is the critical time to be transparent.  "Product packaging is crucial," according to Nestlé, to "inform consumers."[83]  "Responsible marketing" and, in particular, "[p]roduct labelling" is of "[m]ajor" concern to customers.[84]

78.     Nestlé is well aware of the consumer concern about human rights abuses in supply chains and has thus mounted its extensive public relations effort to position itself as a company that does not permit child and slave labor in its supply chain.  Its hollow public relations statements mask the tragic truth that millions of African children are engaged in the Worst Forms of Child Labor.  Had consumers known the truth, they would not have purchased or paid as much for Nestlé's Chocolate Products.

## V.     CLASS ACTION ALLEGATIONS

79.     Under Rule 23 of the Federal Rules of Civil Procedure, Plaintiff seeks certification of a Class defined as follows:

> All consumers who purchased Nestlé's Chocolate Products in Massachusetts during the four years prior to the filing of the complaint.

80.     Excluded from the Class is Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant.  Also, excluded from the Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

---

[83] *Id*. at 165.

[84] *Id*. at 11-12.

81.     Plaintiff does not know the exact number of Class Members at the present time. However, due to the nature of the trade and commerce involved, there appear to be millions of Class Members such that joinder of all Class members is impracticable.

82.     The Class is ascertainable by objective criteria permitting self-identification in response to notice, and notice can be provided through techniques similar to those customarily used in other consumer fraud cases and complex class actions, and through Nestlé's business records.

83.     There are questions of law and fact common to the Class.  Defendant's unlawful omissions similarly impact Class Members, all of who purchased one or more Chocolate Products.

84.     Plaintiff asserts claims that are typical of the Class. Plaintiff and all Class Members have been subjected to the same wrongful conduct because they all have purchased Defendant's Chocolate Products that were not disclosed as having child and/or slave labor in the supply chain.  As a result, and like other members of the Class, Plaintiff purchased and paid an amount for Chocolate Products which she otherwise would not have paid.

85.     Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff is represented by counsel competent and experienced in both consumer protection and class action litigation.

86.     Class certification is appropriate because Defendant has acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

87.     Class certification is also appropriate because common questions of law and fact substantially predominate over any questions that may affect only individual members of the Class, including, *inter alia*, the following:

    a.     Whether Defendant knew that there was child and slave labor in its Chocolate Products supply chain;

    b.     Whether Defendant failed to disclose the child and slave labor in its Chocolate Products supply chain;

    c.     Whether the child and slave labor in the Chocolate Products supply chain would be material to a reasonable consumer;

    d.     Whether Defendant's material omission had the capacity to deceive a reasonable consumer;

    e.     Whether Defendant's conduct violates the Massachusetts Consumer Protection Law;

    f.     Whether Defendant has been unjustly enriched;

    g.     Whether the challenged practices harmed Plaintiff and members of the Class; and

    h.     Whether Plaintiff and members of the Class are entitled to damages, trebling, restitution, and injunctive or other relief.

88.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all the individual Class Members is impracticable.  Furthermore, because the restitution and/or damages suffered, and continue to be suffered, by each individual Class Member may be relatively small, the expense and burden of

individual litigation would make it very difficult or impossible for individual Class Members to redress the wrongs done to each of them individually and the burden imposed on the judicial system would be enormous.

89. The prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

## VI. CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE MASSACHUSETTS CONSUMER PROTECTION ACT
### (G.L. CHAPTER 93A)

90. Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

91. This cause of action is brought by Plaintiff pursuant to the Massachusetts Consumer Protection Act, G.L. Chapter 93A §§ 2, 9 *et seq.*, on behalf of the Class. Section 2 of the Massachusetts Consumer Protection Act provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

92. Plaintiff, Class Members, and Defendant are "persons" under the Massachusetts Consumer Protection Act pursuant to G.L. Chapter 93A § 1(a).

93. Chocolate Products are tangible goods involved in "trade" and "commerce" subject to the Massachusetts Consumer Protection Act pursuant to G.L. Chapter 93A § 1(b).

94. At all relevant times, Defendant violated and continues to violate the Massachusetts Consumer Protection Act in its transactions regarding its Chocolate Products.

95.     Defendant has knowledge of the child and slave labor in its supply chain based on its admissions set forth above, as well as based on its years of experience marketing and distributing chocolate products made from West African cocoa beans; its partnership with West African exporters; its responsibility for enforcing its supplier code, which forbids child and slave labor; and its failed efforts in conjunction with the Chocolate Manufacturers Association to make good on the promise to eliminate the worst forms of child labor from the West African supply chain by 2005 (and then by 2008 and 2010).

96.     The worst forms of child labor, including dangerous child labor and slave labor, is material to consumers, who care about human rights abuses in supply chains and would not have purchased the Chocolate Products had they known the truth.  But Defendant failed to disclose this information to consumers at the point of sale.  So consumers did not know the truth.

97.     Indeed, consumers do not know or expect that children as young as five years old work all day clearing the forest, spraying pesticides, cutting down cocoa bean pods from trees with machetes, and dragging heavy sacks through the forest—and that many were abducted from their families, sold into slavery, and forced to work without pay and subject to harsh physical punishment.

98.     As set forth above, Defendant's material omissions in the labeling of its Chocolate Products is deceptive because it has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted, *i.e.*, the omissions enticed reasonable consumers to purchase the Chocolate Products when they would not have had they known the truth.

99.     As set forth above, Defendant's material omissions in the labeling of its Chocolate Products is also unfair to consumers.  Purchasing products one would not have

otherwise purchased and the unwitting support of child and slave labor causes substantial injury to consumers. Defendant's undisclosed participation in supply chains making use of the worst forms of child labor is immoral, unethical, oppressive, unscrupulous, unconscionable, and offends established and internationally recognized public policies against the use of child and slave labor.

100.     For example, the United Nation's International Labor Convention No. 182 prohibits the worst forms of child labor[85] and has been ratified by the United States.[86]  The worst forms of child labor include the compulsory labor of trafficked children and the labor of children involving dangerous tools, transport of heavy loads, and exposure to toxic substances, *i.e.*, hazardous work,[87] which occurs in Nestle's supply chain, as set forth above.  In addition, the United Nation's 1948 Universal Declaration of Human Rights states that "No one shall be held in slavery or servitude; slavery and the slave trade shall be prohibited in all their forms,"[88] and the United States was one of the original countries voting to adopt it.[89]

101.     Nestlé's conduct also impairs competition within the market for chocolate products, and prevents Plaintiff and Class Members from making fully informed decisions about the kind of chocolate products to purchase and the price to pay for such products.

---

[85] http://www.ilo.org/public/english/standards/relm/ilc/ilc87/com-chic.htm.

[86] http://www.ilo.org/dyn/normlex/en/f?p=NORMLEXPUB:11300:0::NO:11300:P11300_INSTRUMENT_ID:312327:NO.

[87] Complaint, ¶ 4.

[88] http://www.un.org/en/documents/udhr/index.shtml.

[89] https://web.archive.org/web/20130927221000/http://unyearbook.un.org/1948-49YUN/1948-49_P1_CH5.pdf at 535.

010545-11  010545-14 1013650 V1

102.     Plaintiff and members of the Class were directly and foreseeably injured by

Nestlé's conduct and lost money as a result of Nestlé's material omissions, because they would

not have purchased nor paid as much for Chocolate Products had they known the truth.

103.     Accordingly, Plaintiff requests that this Court enter such orders or judgments as

may be necessary to enjoin Defendant from continuing its unfair and deceptive business

practices, to compensate Plaintiff and members of the Class for their damages plus trebling, to

award attorneys' fees and costs, and to provide such other relief as set forth below.

## COUNT II
## UNJUST ENRICHMENT

104.     Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

105.     To the detriment of Plaintiff and Class Members, Defendant has and continues to

be unjustly enriched as a result of the wrongful conduct alleged herein.  Defendant has unjustly

benefited by receiving payments for Chocolate Products that would not have been possible

absent the wrongful conduct.  Between the parties, it would be unjust for Defendant to retain the

benefits attained by its wrongful actions.

106.     Accordingly, Plaintiff and Class Members seek full restitution of Defendant's

enrichment, benefits, and ill-gotten gains acquired as a result of the wrongful conduct alleged

herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated,

respectfully request that this Court enter a judgment against Defendant and in favor of Plaintiff,

and grant the following relief:

A.     Determine that this action may be maintained as a class action with respect to the

Class identified herein and certify it as such under Rules 23(b)(2) and/or 23(b)(3), or

alternatively certify all issues and claims that are appropriately certified, and designate and appoint Plaintiff as Class Representatives and their counsel as Class Counsel;

B.      Declare, adjudge and decree that Defendant violated the Massachusetts Consumer Protection Law and was unjustly enriched;

C.      Enjoin Defendant from continuing the unfair and deceptive marketing and sale of their Chocolate Products;

D.      Award Plaintiff and the Class all appropriate damages, including trebling;

E.      Award Plaintiff and the Class reasonable attorneys' fees, costs, and pre- and post-judgment interest; and

F.      Award Plaintiff and the Class such other further and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

## JURY TRIAL DEMAND

Plaintiff, by counsel, requests a trial by jury for all claims so triable.

Dated:  February 12, 2018

Respectfully submitted,

*/s/ Hannah W. Brennan*
Hannah W. Brennan (#688179)
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
(617) 482-3700
*hannahb@hbsslaw.com*

Steve W. Berman (*pro hac vice to be filed*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
(206) 623-7292
*steve@hbsslaw.com*

Elaine T. Byszewski (*pro hac vice to be filed*)
301 N. Lake Avenue, Suite 920
Pasadena, CA  91101
(213) 330-7150
elaine@hbsslaw.com

*Attorneys for Plaintiff and the Proposed Class*